277 So.2d 649 (1973)
Birdie ROMERO
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY.
No. 52745.
Supreme Court of Louisiana.
May 7, 1973.
Domengeaux & Wright, Bob F. Wright, Lafayette, Jack Fruge, Jr., Ville Platte, for plaintiff-applicant.
McBride & Brewster, Norman P. Foret, Lafayette, for defendant-respondent.
*650 MARCUS, Justice:
Mrs. Birdie Romero seeks damages for personal injuries sustained in an automobile accident which occurred in the State of Texas. She was a guest passenger in an automobile driven by her husband, Gilbert Romero, whose gross negligence is alleged to have been the cause of the accident. Their legal domicile is in the State of Louisiana, where the present suit was instituted against the husband's liability insurer under the direct action statute. Judgment was rendered in the trial court in favor of the plaintiff. Defendant took an appeal to the Court of Appeal, Third Circuit, 264 So.2d 258, which reversed the judgment of the lower court and rendered judgment in favor of defendant, dismissing plaintiff's suit. Upon application by plaintiff to this Court, a writ of review was granted.
The facts in this case are not in dispute. The case was submitted on the depositions of Birdie Romero and Gilbert Romero and the medical report of Dr. D. J. Palmintier. The record reveals that the Romeros were residents of and domiciled in Lafayette, Louisiana. Mr. Romero was in the retail furniture business in Lafayette, and Mrs. Romero was employed by him as a bookkeeper and assisted at times in the sales department. It is further indicated that the Romeros had additional income from rentals of apartments owned by them. Their family automobile was insured by defendant insurance company, which policy was purchased in Lafayette. On January 19, 1968, the Romeros were returning from a short business trip in Texas. The accident took place in Texas shortly after they left Dallas that morning. They stopped at a nursery off the highway and purchased some rose bushes. After making the purchase, Mr. Romero, as the driver, and his wife, as guest passenger, proceeded on their way. As Mr. Romero attempted to re-enter the highway by crossing the lanes of traffic, the side of his vehicle was struck from the left by another vehicle which was traveling on the highway. After the accident, the couple was driven to Lafayette General Hospital where Mrs. Romero was treated for multiple rib fractures and a ruptured spleen which was later removed surgically.
The trial court applied the case of Webb v. Zurich Insurance Company, 251 La. 558, 205 So.2d 398 (1968) in holding that Mrs. Romero could sue her husband's insurer directly in a Louisiana court for an accident which occurred outside of the State of Louisiana and concluded that Mr. Romero was "guilty of gross negligence or a `heedless or reckless disregard of the rights of others.'" The court further awarded Mrs. Romero $10,000.00 for her pain and suffering.
The Court of Appeal, in reversing the lower court, considered that the decisive issue was which state law applies, Texas or Louisiana. The court indicated that under Texas law, a wife does not have a cause of action in tort against her husband, Crawford v. DeLong, 324 S.W.2d 25 (Tex.Civ. App. 1959), and no direct action statute allows her to sue her husband's automobile liability insurer. Under Louisiana law, a wife can bring a direct action against her husband's insurer under LSA R.S. 22:655.
The Third Circuit felt that the conflicts of laws issue presented was controlled by the case of Johnson v. St. Paul Mercury Insurance Company, 256 La. 289, 236 So.2d 216 (1970). In that case, this Court applied the lex loci delicti doctrine and refused to apply the substantive law of the forum. Based upon our decision in the Johnson case, the Court of Appeal reversed the trial court.
In the recent case of Jagers v. Royal Indemnity Company et al., La., 276 So.2d 309, handed down on March 26, 1973, in facts very similar to the facts herein, it was held that it was unnecessary to determine the law of Mississippi which was the place where the accident occurred. It was held that, since there was no bar in Louisiana to a suit by a parent against a major child for a tort, even one committed during *651 the minority of the child, the law of Louisiana governs the action between the Louisiana domicilaries. We held:
"This case presents a false conflict of laws question. `Conflict of Laws is that part of the law of each state which determines what effect is given to the fact that the case may have a significant relationship to more than one state.' Restatement, Second, Conflict of Laws, § 2 (1969). A false conflict occurs when it is found that only a single state has an interest in the application of its law, and that the other state involved has no interest in the application of its law in the case.
"Such a case of false conflict was Johnson v. St. Paul Mercury Insurance Company, 256 La. 289, 236 So.2d 216 (1970). * * *"
We further held:
"No reason advanced for perpetuating the doctrine which would apply the law of the place of the tort, particularly in false conflicts cases like Johnson and the instant case, is either convincing or controlling. Johnson v. St. Paul Mercury Insurance Company, supra, is overruled.
"When the foreign state has no interest in the application of its law in Louisiana litigation, we deem that the application of Louisiana law by Louisiana courts will contribute much greater predictability, certainty and constancy to the law."
Since the factual situation in the instant case presents one where only Louisiana has an interest in the application of its laws and Texas has none, the law of Louisiana will be applied. Under Louisiana law, a wife can bring a direct action in tort against her husband's liability insurer under LSA R.S. 22:655. Furthermore, there is no prohibition in Louisiana to a suit by a guest passenger against his host driver. Accordingly, plaintiff's claim must be determined by the Louisiana law of negligence. Under our substantive law, ordinary negligence is sufficient to warrant recovery by a guest passenger for the negligence of the host driver. Civil Code Article 2315.
There can be no doubt from the record that Mr. Romero was negligent and that his negligence was the proximate cause of the accident. This is clearly indicated from the following questioning and responses in regard to his re-entry into the highway from the nursery:
"A * * * Then I probably went across and I must have never looked because if I had I would have seen that car. I probably didn't look.
"* * *
"Q But before leaving the lot and getting on the pavement of the highway, did you bring your car to a stop at any time?
"A No. After I backed up and then I started going across, I just went on across.
"* * *
"Q And you don't remember whether you looked for traffic before you entered the highway?
"A I'm sure I looked when I got in the car to back up, but I don't think I looked I must have never looked when I went right across, you see."
In regard to the question of quantum, the trial court considered $10,000.00 to be fair and adequate for the pain and suffering to Mrs. Romero. We agree.
The medical evidence reveals that Mrs. Romero was seen at the Lafayette General Hospital by Dr. William Smith on the afternoon of the accident. It was apparent at that time that the patient had a serious intra-abdominal injury, and surgical consultation was requested. Mrs. Romero was seen at that time by Dr. Palmintier who concluded that she had suffered severe, intra-abdominal injury, possibly a ruptured spleen with a hemoperitoneum. There were also fractured ribs on the left side in *652 the lower portion, which further enhanced this possibility. She was treated by being administered intravenous fluids and blood and was immediately taken to surgery where an abdominal exploration was carried out which verified the pre-operative diagnosis. There was approximately 3000 c. c. of clotted and free blood within the peritoneal cavity. The spleen had been ruptured with a tear in the capsule and considerable hematoma was present around the structure. There was some retroperitoneal hematoma as well. The surgery consisted of evacuation of the hematoma and removal of the injured spleen. Four units of blood were given during the operative procedure. The patient was sent to the intensive care unit because of the preoperative finding of some type of myocardial abnormality, and it was felt at that time that the possibility of a myocardial contusion could not definitely be ruled out. Dr. Mims Mitchell, cardiologist, was consulted, and he followed the patient while she was in the intensive care unit. The patient had considerable amount of adynamic ileus following the operative procedure, which was anticipated. She also received therapy to prevent any serious pulmonary complications as a result of her rib fractures and altered physiology due to the said fractures. Mrs. Romero was discharged from the hospital on February 3, 1968. She was further confined to her bed at home for about three or four weeks. After that, she returned to her job on a three to four hour a day basis for about two or three weeks, and thereafter resumed her normal activities. She testified that she was seen by Dr. Palmintier as an out-patient for about two months after the accident. Dr. Palmintier's report, which was dated April 4, 1968, indicates that her condition had gradually improved; however, she still had persistent pain in the left chest and some insomnia. Her heart condition had improved, and the patient was ambulatory at that time. Mrs. Romero testified at the time of the deposition, which was on August 31, 1968, that she still had occasional headaches, chest pains and pain on her side.
For the foregoing reasons, judgment of the Court of Appeal is reversed and set aside, and judgment is now rendered in favor of plaintiff, Mrs. Birdie Romero, and against defendant, State Farm Mutual Automobile Insurance Company, in the amount of $10,000.00, together with legal interest from the date of judicial demand until paid, and all costs of these proceedings.
SUMMERS, Justice (dissenting).
I adhere to the reasons assigned in Johnson v. St. Paul Mercury Insurance Company, 256 La. 289, 236 So.2d 216 (1970), and my dissent in Jagers v. Royal Indemnity Company et al., La., 276 So.2d 309, decided March 26, 1973.
I respectfully dissent.